FILED
9/9/26 8:25 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:<br><br>**PATRIOT ENTERPRISES WORLDWIDE, LLC**,<br>*Debtor*. | : | Case No. 26-21301-GLT<br>Chapter 7 |
| **ATTORNEY GENERAL OF NEW JERSEY**,<br>*Movant*,<br>v.<br><br>**PATRIOT ENTERPRISES WORLDWIDE, LLC**,<br>*Respondent*. | : | Related to Dkt. Nos. 59, 65, 66, 67, 71 |
| In re:<br><br>**NOT AN LLC, LLC**,<br>*Debtor*. | : | Case No. 26-21300-GLT<br>Chapter 7 |
| **ATTORNEY GENERAL OF NEW JERSEY**,<br>*Movant*,<br>v.<br><br>**NOT AN LLC, LLC**,<br>*Respondent*. | : | Related to Dkt. Nos. 49,61, 62, 63, 69 |

## MEMORANDUM OPINION

New Jersey Attorney General Jennifer Davenport filed emergency motions to strike procedurally defective notices of removal filed by debtors in two related chapter 7 cases.[1] The

[1] See *The New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21301-GLT, Dkt. No. 67 at ¶ 1; *The New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21300-GLT, Dkt. No. 63 at ¶ 1.

defects are obvious[2]—potentially too obvious[3]—so the motions could have been disposed of in a few sentences. However, the Attorney General's surprisingly condescending and misguided assertion that it enjoys *unreviewable* freedom to prosecute the removed action under the police powers exception to the automatic stay requires more. The Court is compelled to address her alternative substantive argument against removal based on the NJ Action enforcing New Jersey's police or regulatory power. Accordingly, the Court will strike the notices of removal, but not for that reason.

## I. BACKGROUND

Prepetition, debtors Patriot Enterprises Worldwide, LLC (d/b/a Eagle Shows) and Not an LLC, LLC (d/b/a JSD Supply) were sued by the New Jersey Attorney General for facilitating the marketing and sale of products to New Jersey residents for the illegal fabrication of un-serialized and untraceable "ghost guns" (the "NJ Action").[4] Specifically, the *Amended Complaint* seeks injunctive relief "to prevent continuing harm," consequential and punitive damages, restitution, and costs.[5] Apparently having been driven to insolvency defending

---

2 See *Response of the Debtor to the New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21301-GLT, Dkt. No. 71 at ¶ 8 (consenting to the Court striking the notice of removal); *Response of the Debtor to the New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21300-GLT, Dkt. No. 69 at ¶ 8 (same).

3 Whether the filing of the notices of removal violated Fed. R. Bankr. P. 9011 remains a concern and may be addressed after the contours of the automatic stay have been more fully analyzed.

4 See *The New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21301-GLT, Dkt. No. 67 at ¶ 1. Because identical pleadings were filed in both cases, the Court will limit its fact citations to docket entries contained in the *Patriot* case.

5 See *Exhibit A*, Case No. 26-21301-GLT, Dkt. No. 61-1 at 70.

themselves,[6] the Debtors filed voluntary chapter 7 petitions on May 7, 2026, and chapter 7 trustees were appointed thereafter (the "Estate Trustees").

On July 6, 2026, the Attorney General obtained a ruling from the Superior Court of New Jersey Chancery Division ("Superior Court") that "there is no automatic stay in place as [the NJ Action] falls under the police power exemption [sic] of the automatic stay,"[7] and pressed a prepetition motion for discovery sanctions. This occurred with the nominal participation of the Estate Trustees on dubious notice.[8] And despite the case having been pending since December 2023, the Superior Court then set a discovery deadline within six weeks to enable summary judgment motions before the end of the year.[9] Given this pace, the Estate Trustees view the NJ Action as a costly distraction from the administration of the estates,[10] but the Attorney General asserts they never formally opposed anything.[11]

Following the Superior Court's orders, the Debtors filed motions to enforce the automatic stay to (among other things) deem the post-petition orders void *ab initio*.[12] Basically,

---

6 See *Response of the Debtor to the New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21301-GLT, Dkt. No. 71 at ¶ 1.

7 See *Exhibit A*, Case No. 26-21301-GLT, Dkt. No. 67-1 at ¶ 1.

8 It is undisputed that the Estate Trustees were not given unredacted copies of the Attorney General's motion prior to the sanctions hearing. See *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 14:11-15:7. The Attorney General justified this based on the existence of a protective order and because the Estate Trustees were "not automatically substituted" for the Debtor in the NJ Action. Id. at 15:8-16:17.

9 See *Exhibit B*, Case No. 26-21301-GLT, Dkt. No. 67-2. The Estate Trustees were unaware of the Superior Court's scheduling conference until after it occurred. See *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 38:16-39:5, 39:21-25.

10 *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 10:5-12:1, 38:2-15. Ironically, the Attorney General volunteered that the NJ Action's schedule also prevented robust settlement discussions with the Estate Trustees until the removal notices were filed. Id. at 17:5-23.

11 Id. at 25:17-26:3.

12 See, e.g., *Motion of the Debtors for Entry of an Order: (I) Enforcing Automatic Stay Under Section 362 of the Bankruptcy Code; (II) Deeming the Post-Petition Actions of the Mercer County, New Jersey Civil Courts Void Ab Initio; and (III) Imposing Sanctions for Violations of the Automatic Stay by the State of New Jersey and its Counsel*, Case No. 26-21301-GLT, Dkt. No. 61.

the now-liquidating Debtors contend that the scope of the NJ Action has expanded beyond what section 362(b)(4) of the Bankruptcy Code permits.[13] Those motions were scheduled in the ordinary course.[14] On the same date (August 7, 2026), the Debtors filed notices purporting to remove the NJ Action directly to the United States Bankruptcy Court for the Western District of Pennsylvania.[15] In response, the Attorney General filed emergency motions to strike the notices or, alternatively, to remand to the Superior Court to prevent disruption to the Superior Court's schedule.[16] She argued that removal was untimely, filed in the wrong court, and otherwise impossible as the NJ Action was an exercise of New Jersey's police powers.[17]

The Court heard the motions to strike on August 13, 2026 (on roughly one-day notice) with appearances from the Debtor and its state court counsel ("Litigation Counsel"),[18] the Estate Trustees, and the Attorney General.[19] Only the Debtors filed written responses just prior to the hearing, but the Estate Trustees' comments during the hearing ultimately echoed the same

---

13 Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

14 Although initially scheduled for September 10, 2026, the Court continued the hearing to October 29, 2026 at the parties' request.

15 See *Notice of Removal of State Court Proceedings Pursuant to 28 U.S.C. §§ 1334, 1452 and Fed. R. Bankr. P. 9027*, Case No. 26-21301-GLT, Dkt. No. 59; *Notice of Removal of State Court Proceedings Pursuant to 28 U.S.C. §§ 1334, 1452 and Fed. R. Bankr. P. 9027*, Case No. 26-21300-GLT, Dkt. No. 49. On the same day, the Court entered a text order requiring the Debtor to file a supplement explaining how the notices were compliant with Fed. R. Bankr. P. 9027. See *Text Order*, Case No. 26-21301-GLT, Dkt. 65.

16 See *The New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21301-GLT, Dkt. No. 67 at ¶¶ 6-9; see also *The New Jersey Attorney General's Supplemental Statement Regarding the Police Power Lawsuit Against the Debtors*, Case No. 26-21301-GLT, Dkt. No. 66.

17 Id. at ¶¶ 26-32.

18 Litigation Counsel, who has not been retained by the Estate Trustees, has moved to withdraw from the NJ Action and the Attorney General signaled it will oppose unless substitute counsel files an appearance. See *The New Jersey Attorney General's Supplemental Statement Regarding the Police Power Lawsuit Against the Debtors*, Case No. 26-21301-GLT, Dkt. No. 66 at ¶ 4.

19 The Court notes that five attorneys appeared on behalf of the Attorney General, albeit apparently *pro bono*. *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 20:20-22.

practical frustrations. Put simply, they all questioned the continued purpose of the NJ Action given that: (1) the Debtors have ceased operations and no one opposes injunctive relief; and (2) New Jersey's monetary claim could be more efficiently quantified through the claims allowance process or negotiation with the Estate Trustees.[20] Moreover, aside from some potential recoverable transfers identified by the Attorney General, the Estate Trustees likely have few assets with which to pay claims.[21] That said, the Estate Trustees took no position regarding removal, expressing only a preference for the status quo because the "case management order is absurd" and "an effort of futility."[22]

The Debtors acknowledged that the notices of removal were filed in the wrong court but maintained they were timely. They theorized that the triggering event for the removal period was the July 6, 2026 entry of the Superior Court's order finding the NJ Action excepted from the stay.[23] As to the removability of the NJ Action, the Debtors vaguely asserted that it has exceeded the police powers exception because the injunctive and monetary relief requested are not opposed.[24] On the other hand, they could not articulate why removal was worthwhile or necessary.[25]

---

20 See *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 37:14-19, 43:18-5.

21 The Estate Trustees expressed doubt over the practicality of liquidating any inventory of ghost gun components given the legal complexities involved. See *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 11:8-18.

22 *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 43:6-15.

23 Id. at 30:13-32:14.

24 Id. at 33:5-22.

25 See *Response of the Debtor to the New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21301-GLT, Dkt. No. 71 at ¶ 3 ("From the Debtor's perspective, the Attorney General can have whatever order enjoining future conduct of the Debtor or imposing any monetary judgment it wants, as the Debtor will be wound-down in an orderly liquidation by the trustee."); see also *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 34:1-11.

For her part, the Attorney General emphasized her "responsibility to ensure that laws are not simply not violated, but that when they've been violated, there are clear rulings as well as ramifications as a result of doing so"[26] and her "need to proceed in a way that makes sure that the validity of [New Jersey's] laws is just -- is reinforced and applied."[27] As best the Court can understand, the Attorney General desires findings on summary judgment, possibly aided by adverse inferences imposed as a discovery sanction, as a public vindication.[28] Notably, her counsel could not explain what further discovery was necessary or its purpose beyond simply supporting a summary judgment motion.[29] Nevertheless, the Attorney General concedes that the Debtors likely lack the funds to pay New Jersey's claim once reduced to a judgment.[30]

Regardless, the Attorney General insisted that the NJ Action should proceed expeditiously because the Superior Court has already determined that it falls within the police powers exception to the stay.[31] Indeed, she argued that this Court is bound by the Superior Court's findings under the *Rooker-Feldman* doctrine, meaning that the NJ Action is not removable.[32] Although this would also doom the Debtors' motions to enforce the stay, the Attorney General did

---

26 *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 19:9-20.

27 Id. at 21:4-6.

28 Id. at 45:8-18. This might be too generous. The Court is aware that the Attorney General believes that the Debtors' principals have transferred their operations to new entities. Id. at 21:20-22:20. Given the time and expense put into the NJ Action, the Attorney General's goal may be to obtain findings that will expedite its newly-filed civil action against the principals.

29 Id. at 40:13-41:21. The Attorney General represented that the discovery was not related to tracing transferred assets of the Debtors. Id. at 41:3-7.

30 Id. at 42:12-14.

31 See *The New Jersey Attorney General's Emergency Motion to Strike Notices of Removal or Alternatively to Remand the Police Power Action to New Jersey State Court*, Case No. 26-21301-GLT, Dkt. No. 67 at ¶¶ 26-29; *The New Jersey Attorney General's Supplemental Statement Regarding the Police Power Lawsuit Against the Debtors*, Case No. 26-21301-GLT, Dkt. No. 66 at ¶¶ 13-15.

32 Id.

not urge the Court to rule on that matter at this time.[33] Instead, she focused solely on securing the prompt return of jurisdiction to the Superior Court to prevent interference with the case management schedule.

Concerned by the Attorney General having seemingly run roughshod over the Estate Trustees and the lack of pragmatism displayed, the Court directed the parties to meet and confer to explore a global resolution. The Court then took the matter under advisement to address the Attorney General's *Rooker-Feldman* argument. While this memorandum was undergoing final revision, the parties reported productive discussions and asked the Court to delay hearing the motions to enforce the stay to afford them more time.[34]

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. While the NJ Action appears to be a non-core proceeding "related to" cases arising under title 11 of the United States Code, the Debtors argue it is essentially a core proceeding under 28 U.S.C. § 157(b)(2)(B).[35] Regardless, the Court indisputably has jurisdiction and authority to strike a procedurally defective notice of removal.

---

33 See *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 26:4-11; but see *The New Jersey Attorney General's Supplemental Statement Regarding the Police Power Lawsuit Against the Debtors*, Case No. 26-21301-GLT, Dkt. No. 66 at ¶¶ 11-18.

34 See *Joint Motion to Continue Hearing and Related Response Deadline*, Case No. 26-21301-GLT, Dkt. No. 99.

35 See, e.g., *Notice of Removal of State Court Proceedings Pursuant to 28 U.S.C. §§ 1334, 1452 and Fed. R. Bankr. P. 9027*, Case No. 26-21301-GLT, Dkt. No. 59 at ¶ 6.

## III. DISCUSSION

Removal of civil actions related to bankruptcy cases is controlled by 28 U.S.C. § 1452(a). It provides in relevant part:

> A party may remove any claim or cause of action in a civil action *other than . . . a civil action by a governmental unit to enforce such governmental unit's police or regulatory power*, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.[36]

Once removed, a district court with the requisite "related-to" jurisdiction can (and often does automatically) refer the matter to the bankruptcy judges for the district.[37] Removal by itself does not affect a transfer of venue to a different district's bankruptcy court.

Procedurally, "[a] notice of removal must be filed with the clerk for the district and division where the state or federal civil action is pending."[38] If the civil action subject to removal is already pending when the bankruptcy case is commenced, the notice must be filed within the longer of: "(A) 90 days after the order for relief in the bankruptcy case;" or "(B) if the claim or cause of action has been stayed under § 362, 30 days after an order terminating the stay is entered."[39]

### A. The Removal Notices were Filed in the Wrong Court and were Untimely

Assuming the NJ Action could be removed, 28 U.S.C. § 1452 only authorizes removal "to the district court for the district where such civil action is pending"—namely, the

---

36 28 U.S.C. § 1452(a).

37 28 U.S.C. § 157(a).

38 Fed. R. Bankr. P. 9027(a)(1).

39 Fed. R. Bankr. P. 9027(a)(2)(A)-(B). Though not relevant here, there is also a third period applicable only to chapter 11 cases. See Fed. R. Bankr. P. 9027(a)(2)(C).

District of New Jersey.[40] Therefore, under Bankruptcy Rule 9027(a)(1), the Debtors should have filed the notices of removal in the divisional office of the United States District Court for the District of New Jersey where the NJ Action resides, not the United States Bankruptcy Court for the Western District of Pennsylvania. The Debtors concede this point and ask that the notices be stricken without prejudice. Unfortunately, they ignore that the notices are also untimely.

Because the NJ Action was pending when the Debtors commenced these cases, Bankruptcy Rule 9027(a)(1)(A) first sets a default period of 90 days from the petition date for removal. Since the petitions were filed on May 7, 2026, the notices should have been filed by August 5, 2026, but they were filed two days later on August 7, 2026. Curiously, the Debtors suggest timeliness should be measured under Bankruptcy Rule 9027(a)(1)(B) from the date of the Superior Court's order determining the NJ Action was excepted from the stay.[41] First off, the Superior Court did not and could not terminate the automatic stay because that power falls within the bankruptcy court's exclusive jurisdiction.[42] But even if that characterization was accurate, 30 days from an order entered on July 6, 2026 is still August 5, 2026.

In sum: wrong place, wrong time. As such, the notices of removal must be stricken with prejudice.

B. <u>The NJ Action is Not Removable on this Record</u>

As previously stated, "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power" cannot be removed under 28 U.S.C. § 1452(a).[43] The Attorney General argues the Superior Court's order finding that the NJ Action falls under the

---

[40] 28 U.S.C. § 1452(a).

[41] *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 30:13-32:14.

[42] <u>See</u> 28 U.S.C. § 1334(a).

[43] 28 U.S.C. § 1452(a).

police power exception to the stay conclusively establishes that it is not removable. Considering the procedurally improper removal of the NJ Action, the Court need not reach the question of its removability. Yet whether the NJ Action is a proper exercise of New Jersey's police and regulatory power remains relevant to the Debtors' motions to enforce the automatic stay scheduled to be heard in the coming weeks.[44] For that reason, judicial economy is best served by disposing of the Attorney General's *Rooker-Feldman* argument now. To cut right to it—the Court is not bound by the Superior Court's findings that the NJ Action is excepted from the stay under section 362(b)(4).

"The *Rooker-Feldman* doctrine takes its name from two Supreme Court cases policing the boundary between the original jurisdiction of the district courts and the appellate jurisdiction of the Supreme Court."[45] In *T. M. v. Univ. of Maryland Med. Sys. Corp.*, the Supreme Court of the United States explained:

> Under what has become known as the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[46]

---

[44] See *Motion of the Debtors for Entry of an Order: (I) Enforcing Automatic Stay Under Section 362 of the Bankruptcy Code; (II) Deeming the Post-Petition Actions of the Mercer County, New Jersey Civil Courts Void Ab Initio; and (III) Imposing Sanctions for Violations of the Automatic Stay by the State of New Jersey and its Counsel*, Case No. 26-21301-GLT, Dkt. No. 61.

[45] In re Adams, 151 F.4th 144, 150 (3d Cir. 2025). See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed. 2d 206 (1983).

[46] *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1739–44, 225 L. Ed. 2d 238 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

The doctrine is a narrow one.[47] Put simply, "an action that is, or is in effect, an appeal of a state-court judgment may not be lodged in any federal court but the Supreme Court."[48]

There is no question that *Rooker-Feldman* applies in bankruptcy cases.[49] But, as observed by the United States Court of Appeals for the Third Circuit, this seems an "apparent contradiction" because "bankruptcy courts are empowered to avoid state court judgments, to modify them, and to discharge them."[50] In *In re Adams*, the Third Circuit dispelled any friction, stressing that

> those bankruptcy-court powers over state-court judgments are not based on separate invocations of jurisdiction that violate *Rooker-Feldman*. Each, if properly asserted, falls under the grant of bankruptcy court jurisdiction in 28 U.S.C. § 1334. And each, again if properly asserted, lays claim to some independent bankruptcy-court power contained in Title 11.[51]

The lesson is that "*Rooker-Feldman* is not offended when a bankruptcy court acts pursuant to a statutory bankruptcy power under the grant of bankruptcy jurisdiction."[52]

---

47 Id. at 1748, 1754.

48 In re Adams, 151 F.4th at 152.

49 Id. at 154.

50 Id. (citations omitted).

51 Id.

52 Koger v. Usoroh (In re Koger), No. 20-23340-GLT, 2025 WL 2807695, at *11 (Bankr. W.D. Pa. Sept. 30, 2025).

Here, the Court agrees that the Superior Court had concurrent jurisdiction to assess the impact of the automatic stay on matters before it.[53] And the Attorney General concedes,[54] as she must, that the bankruptcy court has *exclusive jurisdiction* to modify, annul, or terminate the stay under section 362(d).[55] As illustrated by Third Circuit precedent,[56] the bankruptcy court's exclusive jurisdiction and statutory authority to enforce the stay negates any *Rooker-Feldman* concerns about the improper exercise of appellate jurisdiction.[57] But more importantly, an erroneous state court determination that the stay is inapplicable necessarily "effect[s] an improper modification of the automatic stay" that is beyond the state court's authority and jurisdiction.[58] Further judicial proceedings based on that faulty determination would therefore violate the stay and be void *ab initio*.[59] Frankly, it would be irrational if this Court was powerless to prevent an

---

[53] See 28 U.S.C. § 1334(b) ("the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."); see also Brock v. Morysville Body Works, Inc., 829 F.2d 383, 387 (3d Cir. 1987) ("The court in which the litigation claimed to be stayed is pending thus 'has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.'" In re Baldwin-United Corporation Litigation, 765 F.2d 343, 347 (2d Cir. 1985)); In re Legacy Beavercreek of Dayton Operating Co., LLC, 678 B.R. 558, 570 (Bankr. S.D. Ohio 2026) ("state courts have concurrent jurisdiction to determine whether the automatic stay applies in an action pending before the state court"); In re Welsch, 602 B.R. 682, 684-85 (Bankr. N.D. Ill. 2019) ("Nothing stops a state court from determining the status of the bankruptcy case and deciding whether the stay applies."); In re Gandy, 327 B.R. 796, 800 (Bankr. S.D. Tex. 2005) (state courts possess concurrent jurisdiction to determine whether the stay applies).

[54] *Trans. of August 13, 2026 Hearing*, Case No. 26-21301-GLT, Dkt. No. 94 at 26:12-16.

[55] See 28 U.S.C. § 1334(a), (e); Chao v. Hosp. Staffing Servs., Inc., 270 F.3d 374, 383 (6th Cir. 2001); Gruntz v. Cty. of Los Angeles (In re Gruntz), 202 F.3d 1074, 1080 (9th Cir. 2000); In re Legacy Beavercreek of Dayton Operating Co., LLC, 678 B.R. 558, 570 (Bankr. S.D. Ohio 2026); In re Wood, 670 B.R. 700, 705 (Bankr. S.D.N.Y. 2025); In re Gandy, 327 B.R. 796, 800 (Bankr. S.D. Tex. 2005).

[56] See *In re Adams*, 151 F.4th at 154.

[57] See In re Gruntz, 202 F.3d at 1084; In re Zausner, 638 B.R. 196, 198 (Bankr. M.D. Fla. 2022); In re Edwin A. Epstein, Jr. Operating Co., Inc., 314 B.R. 591, 602 (Bankr. S.D. Tex. 2004).

[58] In re Hall, No. 23-11129, 2024 WL 1023129, at *4 (Bankr. D. Kan. Mar. 6, 2024); see In re Shrum, 597 B.R. 845, 854 (Bankr. E.D. Mich. 2019) (concluding that "if the state court wrongly decides that the stay does not apply and continues with a proceeding against the debtor, it has effectively granted relief from the stay, intruding on the exclusive jurisdiction of the bankruptcy court.").

[59] See Chao v. Hospital Staffing Services, Inc., 270 F.3d at 384; In re Legacy Beavercreek of Dayton Operating Co., LLC, 678 B.R. at 571; In re Wood, 670 B.R. at 705; In re Hall, 2024 WL 1023129, at *4; In re Zausner, 638 B.R. at 197-98; In re Cole, 552 B.R. 903, 909 (Bankr. N.D. Ga. 2016); In re Gandy, 327 B.R. at 801.

inadvertent state-court modification of a federal injunction that risked undermining a bankruptcy case within its exclusive jurisdiction.[60]

The Attorney General cites *In re James* for the proposition that "the bankruptcy and district courts cannot collaterally examine the merits of a state court police power proceeding."[61] That is essentially what the Third Circuit held, but it does not mean what the Attorney General broadly suggests. With the benefit of context, it is apparent that decision is narrowly confined to its somewhat convoluted facts and littered with dicta about the *Rooker-Feldman* doctrine that has since been disavowed.

Basically, New Jersey obtained a civil forfeiture judgment against a chapter 7 debtor while the stay was in effect.[62] The bankruptcy court subsequently found that the action was not excepted under section 362(b)(4) and vacated the judgment.[63] The district court affirmed, albeit for different reasons. The district court concluded that civil forfeitures are generally excepted as an exercise of the state's police power, but that this use of the forfeiture power was not factually supported.[64] On further appeal, the Third Circuit agreed that section 362(b)(4) facially applied to the civil forfeiture and criticized the lower courts for examining the merits of the proceeding:

> It is clear that in this case the district court questioned the merits of the state court proceedings *after deciding that the police power*

---

60 The reality of litigation and bankruptcy filings is that state courts are often confronted by the automatic stay before it is raised in the bankruptcy court. If state courts could make binding rulings about the applicability of the stay subject only to the state appellate process, the federal courts would be frozen out of the most basic debtor protection afforded by bankruptcy system. That is hardly consistent with the concept of exclusive jurisdiction.

61 *The New Jersey Attorney General's Supplemental Statement Regarding the Police Power Lawsuit Against the Debtors*, Case No. 26-21301-GLT, Dkt. No. 66 at ¶ 14 (citing James v. Draper (In re James), 940 F.2d 46 (3d Cir. 1991)).

62 In re James, 940 F.2d at 47-48.

63 Id. at 48-49.

64 Id. at 49.

> *exception was applicable*. However, once validly entered in a court of competent jurisdiction, a judgment is considered valid until overturned or vacated by that court or an appellate court with supervisory powers over that court's system.[65]

Finding that "the district court premised its decision to vacate the state court judgment on its perception that the state court judgment was erroneously decided on the merits," the Third Circuit reversed.[66] Thus, the holding of *In re James* is unremarkable: where the stay does not apply to a police powers action, a federal court cannot vacate a state court judgment on the merits.

*In re James* is clearly rooted in principles of federal-state comity and invokes the *Rooker-Feldman* doctrine as placing limits on what the federal courts can do.[67] The analysis also draws distinctions between staying proceedings and vacating a judgment, initially suggesting that a state court's refusal to obey a federal stay must be addressed in the state courts.[68] Yet the Third Circuit went on to opine that *Rooker-Feldman* may have a "void *ab initio*" exception.[69] Later decisions walked back that idea, recognizing that the varied reasons for finding a judgment void invites the very type of review that *Rooker-Feldman* prohibits.[70] Still, the Third Circuit has

---

65 Id. at 51-52 (emphasis added).

66 Id. at 52.

67 Id. at 51-53.

68 Id. at 51.

69 Id. at 52.

70 See Todd v. United States Bank Nat'l Ass'n, 685 F. App'x 103, 106 (3d Cir. 2017) ("While in dictum we have observed that vacating a state court judgment that is void as a matter of state law may "not intrude upon the notion of mutual respect in federal-state interests," we have not so held, and even the single Ninth Circuit case to which we cited for that proposition did not involve an exception to *Rooker Feldman*, but rather, rested on the conclusion that the bankruptcy court had exclusive jurisdiction of the matter."); In re Bishop, 559 F. App'x 175, 176 (3d Cir. 2014) ("While the Bishops claim to have a federal due process right to appeal final orders from a state court to a federal court, they cite no authority for such a proposition. To the contrary, the Bankruptcy Court and the District Court lacked the power to review the merits of the Delaware state court proceeding."); Knapper v. Bankers Trust Co. (In re Knapper), 407 F.3d 573, 581 n.16 (3d Cir. 2005) ("As a result, the dicta discussion of *Rooker–Feldman* in *James* in the context of a void ab initio exception is not applicable.").

consistently viewed judgments that are void *ab initio* due to the automatic stay differently.[71] Ultimately, *In re James* should be read narrowly and with the understanding that more recent decisions, like *In re Adams*, reflect the Third Circuit's view of *Rooker-Feldman*'s application in bankruptcy cases.

The bottom line is that the Court is not bound by the Superior Court's findings regarding the applicability of the automatic stay. The issue remains live and will be decided in the context of the Debtors' motions to enforce the stay. The Court notes that while the Debtors have the ultimate burden to prove a stay violation under section 362(k), the Attorney General bears the initial burden to show that section 362(b)(4) applies.[72] This requires a detailed analysis consistent with Third Circuit precedent that neither has yet provided.[73] To that end, the Court notes that even if the NJ Action is excepted from the stay, the police powers do not immunize collection acts undertaken in a privileged context.

In the interim, the Attorney General is correct that the Superior Court's order is valid and binding on the parties. On remand, the Superior Court may proceed in its discretion with

---

71 See Todd v. United States Bank Nat'l Ass'n, 685 F. App'x at 106 ("the single Ninth Circuit case to which we cited for that proposition did not involve an exception to *Rooker Feldman*, but rather, rested on the conclusion that the bankruptcy court had exclusive jurisdiction of the matter."); Lambert v. Blackwell, 387 F.3d 210, 240 n.25 (3d Cir. 2004) ("*In re James* differs from this case (and most cases) because the state court's jurisdiction, or lack thereof, was a function of federal law (the federal bankruptcy statute). Here, in contrast, the PCRA Court's jurisdiction is a matter of state law."); Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1132 (3d Cir. 1992) ("Here, the bankruptcy court has the power to vacate the decision of the California Court of Appeal dismissing Raymark's appeal because actions taken in violation of the automatic stay are void ab initio."); Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1207 (3d Cir. 1991), reh'g granted and opinion vacated (Jan. 10, 1992), opinion reinstated on reh'g (Mar. 24, 1992) ("by treating judicial acts and proceedings in violation of the stay as void acts, we deter non-bankruptcy courts from continuing proceedings against a debtor who has sought federal bankruptcy protection.").

72 See Black Diamond Energy of Delaware, Inc. v. Wyoming Oil and Gas Conservation Comm'n (In re Black Diamond Energy of Delaware, Inc.), No. 22-21448-GLT, 2024 WL 4907104, at *9 (Bankr. W.D. Pa. Nov. 27, 2024), aff'd, 676 B.R. 323 (W.D. Pa. 2025).

73 See In re Nortel Networks, Inc., 669 F.3d 128, 139 (3d Cir. 2011) (quoting Lockyer v. Mirant Corp., 398 F.3d 1098, 1108 (9th Cir. 2005)); see also In re Black Diamond Energy of Delaware, Inc., 2024 WL 4907104, at *9 (describing the "two related, and somewhat overlapping tests") (internal quotation marks omitted).

the understanding that the Court's ruling on the motions to enforce the stay could render such actions void. To be clear, that should not be interpreted as signaling disagreement with the Superior Court's findings but merely a statement of law. This Court, like the Superior Court, is duty-bound to adjudicate the matters before it and the chips will fall where they may.

In closing, the Court offers a few observations for the benefit of the Attorney General and the Superior Court. Upon the Debtors' chapter 7 filings, their principals have been dispossessed of authority over the Debtors in favor of the Estate Trustees.[74] As a result, the Estate Trustees are the Debtors' *only* authorized decision-makers regardless of whether they have formally appeared in the NJ Action or not. Moreover, Litigation Counsel has *no authority* to represent the Debtors or Estate Trustees unless and until their retention has been approved by this Court.[75] The takeaway is that the NJ Action cannot proceed without the Estate Trustees, a reality that the Attorney General had seemingly ignored. Still, it is encouraging that discussions among the parties are now underway as that is likely the most efficient path to satisfying the Attorney General's interest in serving the citizens of New Jersey.

---

[74] See 11 U.S.C. § 323(a).

[75] See 11 U.S.C. § 327(a). The Court emphasizes this point because the Attorney General has indicated that it will oppose Litigation Counsel's withdrawal unless substitute counsel appears. See *The New Jersey Attorney General's Supplemental Statement Regarding the Police Power Lawsuit Against the Debtors*, Case No. 26-21301-GLT, Dkt. No. 66 at ¶ 4. Regardless of whether Litigation Counsel is allowed to withdraw, they do not represent the estate and are not entitled to compensation from the estate.

## IV. CONCLUSION

In light of the foregoing, the Court will strike the notices of removal. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

sjb

Dated: September 9, 2026

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE